UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ISAIAH MOORE, | ) |
|                PLAINTIFF | ) |
| VS. | )   CAUSE NO. 1:17-CV-631 RLM-MPB |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
|                DEFENDANT | ) |

## OPINION and ORDER

Isaiah Moore seeks judicial review of a final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1383 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the following reasons, the court vacates the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

### I. BACKGROUND

Mr. Moore's application for disability insurance benefits and supplemental security income was denied initially, on reconsideration, and after an administrative hearing at which he, Bernard Stevens, M.D., and a vocational expert testified. Based on the record before him, the ALJ found that Mr. Moore had severe impairments—morbid obesity, gout, and low back pain with

radiculopathy—but concluded that none of his impairments met or medically equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ decided that Mr. Moore had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with limitations,[1] including his past relevant work as a telephone solicitor, and other work that existed in significant numbers in the national economy, such as document preparer, order clerk, and charge account clerk. The ALJ concluded that he wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits.

When the Appeals Council denied Mr. Moore's request for review, the ALJ's decision became the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

II. STANDARD OF REVIEW

The issue before the court isn't whether Mr. Moore is disabled, but whether substantial evidence supports the ALJ's decision that he wasn't disabled. Scott

---

[1] The ALJ concluded that Mr. Moore could lift up to 20 pounds occasionally and 10 pounds frequently; needed sitting and standing options; couldn't climb ladders, ropes, or scaffolds; and could occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. [Doc. No. 15-2 at 25]. He also required that Mr. Moore "be allowed to use a handheld device, when working on uneven terrain or prolonged ambulation" and that he "avoid environments of concentrated exposure to extremes of temperature, wetness or humidity, and uneven terrain." Id.

v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

III. Discussion

Mr. Moore presents four issues for review: (1) whether substantial evidence supported the ALJ's determination that he didn't have a medically determinable mental impairment; (2) whether the ALJ's credibility determination complied with relevant legal standards; (3) whether the ALJ properly weighed the opinion evidence; and (4) whether the ALJ's residual functional capacity finding accounted for all of Mr. Moore's impairments. Mr. Moore asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

Mr. Moore first argues that the ALJ erred at step two of the sequential evaluation of disability when he determined that Mr. Moore didn't have a medically determinable mental impairment even though the mental health specialists that either examined Mr. Moore or reviewed his records found mental impairments. At step two, Mr. Moore had to show that he had "a medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1521, 416.921. The threshold showing of a severe or non-severe impairment can't be established only by a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment," but must be shown "by medically acceptable clinical and laboratory diagnostic techniques." Id.

Consultative psychologist Dr. Roger Parks conducted a mental status examination at which Mr. Moore exhibited concentration problems, difficulty with serial sevens, and was assessed a GAF score of 50, which suggests serious

4

symptoms or a "serious impairment in social, occupational, or school functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). Based on these findings, Dr. Parks diagnosed Mr. Moore with major depressive disorder.[2] The state agency consultants, Dr. Stacia Hill, Ph.D. and J. Sands, M.D., also found that Mr. Moore had a mental impairment: non-severe affective disorder.

Dr. Parks's report supports a finding of a mental impairment; he is a specialist, diagnosed Mr. Moore with major depressive disorder based on a mental status examination, and the ALJ didn't find that Dr. Parks's mental status examination lacked medically acceptable clinical and laboratory diagnostic techniques. Nonetheless, the ALJ found that "the records don't support a finding of a mental impairment." [Doc. No. 15-2 at 24]. This conclusory finding doesn't provide this court with a logical bridge between his conclusion and the evidence in the record that would allow the court to properly review his finding. *See* Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

The ALJ also pointed to brief mental health assessments made by

---

[2] The Commissioner notes that the full diagnosis was major depressive disorder, single episode and seeks to minimize the diagnosis by arguing that the diagnosis of single episode "seems to suggest that [p]laintiff's depression was situational or at least not recurring." [Doc. No. 25 at 16]. No medical opinion suggests that Mr. Moore's depression was "situational" and the Commissioner doesn't explain how whether Mr. Moore's depression is recurring is relevant to whether he has a mental impairment. *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 162–163 (5th ed. 2013) (major depressive disorder, single episode is a depressive episode that has lasted at least two weeks and hasn't lapsed since onset).

physicians during treatment appointments, for example, a remark that Mr. Moore had appropriate mood and affect and was cooperative during a follow-up appointment for gout treatment to support his finding of no mental impairment.[3] But if the ALJ sought to weigh these physicians' opinions over those of Dr. Parks, he could only do so after properly weighing Dr. Parks's opinion by considering the required regulatory factors. *See* Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 416.927(c); 20 C.F.R. § 404.1527(c). He didn't do so.

Mr. Moore also contends that the ALJ's credibility determination didn't comply with relevant legal standards because he didn't consider Mr. Moore's daily activities, his symptoms and level of pain, aggravating factors, mediation, treatment, and limitations.

An ALJ's credibility determination is "entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness," but those determinations "are not immune from review." Briscoe ex rel. Taylor v.

---

[3] The ALJ also noted that Mr. Moore wasn't prescribed any medication and hadn't undergone any counseling for any mental impairment. To the extent the ALJ relied on a lack of treatment for his determination that Mr. Moore didn't have a medically determinable mental impairment, it was error. An ALJ can draw a negative inference about a claimant's credibility from an uneven treatment record in certain instances, *see, e.g.,* Murphy v. Colvin, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014), but the Commissioner doesn't cite any authority suggesting that a claimant's failure to pursue treatment provides grounds for discrediting the medical evidence of a mental impairment. And the court of appeals has emphasized that ALJs shouldn't draw an adverse inference from an uneven treatment record when the claimant has a mental impairment because "mental illness . . . may prevent the sufferer from . . . submitting to treatment." Kangail v. Barnhart, 454 F.3d 627, 630 (7th Cir. 2006). *See also* Roddy v. Astrue, 705 F.3d 631, 638 (7th Cir. 2013); Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006).

Barnhart, 425 F.3d 345, 354 (7th Cir. 2005). "In determining credibility[,] an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ can't "discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." Id.

The ALJ's adverse credibility determination rested on his finding that Mr. Moore's "testimony of his significantly limiting condition is . . . not credible in view of the minimal objective findings. While the claimant has some limitations, his allegations that he can do almost nothing is inconsistent and out of proportion with the overall record." [Doc. No. 15-2 at 28]. The court can't uphold this credibility determination because it's based on a lack of objective evidence to support Mr. Moore's allegations of pain and limitations and doesn't demonstrate that the ALJ considered the other required factors, including the Mr. Moore's daily activities, aggravating factors, medication, treatment, and limitations. See Villano v. Astrue, 556 F.3d at 562.

Mr. Moore next argues that the ALJ improperly discounted the opinion of his treating neurologist, Julian Ungar-Sargon, M.D., Ph.D. Dr. Ungar-Sargon examined Mr. Moore seven times and reviewed EMG/NCV studies and CT scans. Dr. Ungar-Sargon diagnosed him with, among other things, lumbar disc displacement, compression of the spinal nerve root, pelvic pain, sacroiliitis, and thoracic spondylosis. The record includes a note from Dr. Ungar-Sargon that Mr.

7

Moore was under his care for spinal degenerative arthritis and was "totally disabled from gainful employment." [Doc. No. 15-8 at 73]. Dr. Ungar-Sargon's opinion that Mr. Moore was totally disabled is the only opinion of Dr. Ungar-Sargon's to which the ALJ assigned weight, giving it "no weight" because it was based on Mr. Moore's subjective complaints and was inconsistent with the studies and progress notes in the record. [Doc. No. 15-2 at 28].

Whether Mr. Moore is disabled is a determination reserved to the Commissioner and medical evidence on that issue isn't controlling. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). But that wasn't the basis the ALJ articulated for affording Dr. Ungar-Sargon's opinion "no weight" and, despite his opinion addressing an issue reserved to the Commissioner, the ALJ still was required to properly consider and weigh Dr. Ungar-Sargon's opinions. Garcia v. Colvin, 741 F.3d 758, 760 (7th Cir. 2013); Bjornson v. Astrue, 671 F.3d 640, 647–648 (7th Cir. 2012).

While the ALJ asserted that Dr. Ungar-Sargon's opinion was inconsistent with the objective evidence, his review of the evidence includes testing that could support those opinions. The ALJ noted that Dr. Ungar-Sargon's lumbar spine examination revealed hypertonicity, spasms, and tenderness; straight leg testing was positive on the left; and sensory examinations showed a loss of all modality in lower extremities and a loss of lower reflexes. The ALJ noted that while the lumbar spine CT scan was normal, the EMG/NCV studies indicated chronic left L4-L5 radiculopathy and the thoracic spine CT scan showed a few anterior

osteophytes. The ALJ didn't adequate explain why this testing didn't support Dr. Ungar-Sargon's opinions or why, despite these results, he found that Dr. Ungar-Sargon's opinion was based solely on Mr. Moore's subjective complaints. *See* Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010) (the ALJ must provide a logical bridge between his conclusions and the evidence in the record).

The ALJ's finding that Dr. Ungar-Sargon's opinion warranted no weight was also erroneous because he didn't fully consider the regulatory factors before assigning weight to his opinions. The Commissioner concedes that the ALJ didn't consider all of the regulatory factors, but argues that he sufficiently complied with the regulations because he discussed most of the regulatory factors. The court can't agree. The ALJ must address all of the regulatory factors before assigning weight to medical and psychological opinions, Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 416.927(c); 20 C.F.R. § 404.1527(c), and the failure to do so "is itself a deficiency that warrants remand." Evans v. Colvin, No. 12-CV-888-JDP, 2014 WL 2615413, at *5 (W.D. Wis. June 12, 2014). *But see* Henke v. Astrue, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (noting that the ALJ's discussion of two of the relevant factors was sufficient even though the ALJ didn't "explicitly weigh every factor while discussing her decision to reject [a medical opinion]").

Mr. Moore also contends that the ALJ's residual functional capacity determination isn't supported by substantial evidence because the determination didn't account for all of Mr. Moore's impairments. Because the

9

ALJ's residual functional capacity determination is based on his determination that Mr. Moore had no mental impairment and his improper evaluation of the medical evidence in the record, the ALJ should reconsider his residual functional capacity finding after reassessing his step two determination and properly weighing the opinion evidence on remand. *See* Creek v. Village of Westhaven, 144 F.3d 441, 445 (7th Cir. 1998) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, (1939)) (a lower court can consider issues that weren't included within the mandate of the reviewing court).

IV. CONCLUSION

The court VACATES the Commissioner's decision and REMANDS this case for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED:     March 26, 2018

/s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution:
All electronically registered counsel of record